IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 6:25-cr-103-ACA-JHE |
| CARL LOFTON CARPENTER and JAMES MATTHEW HANDLEY, | |
| Defendants. | |

**DEFENDANT JAMES MATTHEW HANDLEY'S
MOTION TO DISMISS COUNT THREE
PURSUANT TO FED.R.CRIM.P. 12(b)(3)(B)(v)**

## I.    INTRODUCTION

The government disputes the accuracy of certain testimony defendant James Matthew Handley gave before the grand jury. But instead of accusing him of perjury in violation of 18 U.S.C. § 1623, the government charged Handley with witness tampering in violation of 18 U.S.C. § 1512(b)(3). That statute – which is entitled "Tampering with a witness, victim, or an informant" – applies when an individual "engages in *misleading conduct toward another person*, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense[.]" *Id.* (emphasis added).

1

Under the government's theory, the defendant can be convicted even though he did not tamper with a "witness, victim, or informant" by engaging in misleading conduct toward such a person. In the government's view, the charge can properly rest on the belief that the defendant "knowingly misled *the Grand Jury* in statements provided in connection with its investigation[.]" Indictment, Doc. 1, Count Three (emphasis added). In other words, that theory suggests the statute is properly charged when the "person" toward whom the defendant engaged in misleading conduct was the grand jury, and the way in which he did so was through his testimony before that investigative body.[1]

But neither the "grand jury" nor individual "grand jurors" fall within the scope of the term "another person" as used in §1512(b)(3).[2] Indeed, despite extensive research, the defense has failed to identify a single case supporting such a theory. Instead of showing that he testified falsely in the grand jury, the indictment as framed lowers dramatically the burden otherwise necessary to convict the defendant on a perjury charge while simultaneously ratcheting up his criminal exposure. This theory

---

[1] *See United States v. R. Enters.*, 498 U.S. 292, 297 (1991) ("[t]he grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a crime has been committed").

[2] The indictment effectively concedes this point. Instead of simply tracking the "another person" language of the statute, it adds a pluralized version in a nod to the fact that numerous individuals make up a grand jury. *See* Doc. 1 at Count Three (alleging that he "knowingly engaged in misleading conduct toward another person *and persons*" (emphasis added)).

2

is not simply untested – it appears to be unprecedented. More to the point, it fails to state an offense.

Allowing this prosecution to move forward on this flawed premise not only would require this Court to break entirely new ground, but also to ignore longstanding principles of statutory construction, overlook well-established legal tenets and controlling authorities, and disregard common sense in the process. This Court should decline to do any – much less all – of those things. Under Federal Rule of Criminal Procedure 12(b)(3), this Court has the authority to dismiss Count Three at this stage. For the reasons detailed below, the defendant respectfully requests the Court do so.

## II.    BACKGROUND

The Indictment named the defendant and Carl Carpenter. Each was a Walker County Sheriff's Deputy during the relevant time period. Doc. 1, Introduction, ¶1. The Indictment charged three counts – two against each defendant - relating to the arrest of Individual #1.

In Count One, Carpenter alone was charged with violating 18 U.S.C. § 242 by using unreasonable force against Individual #1. Doc. 1 at 2. Specifically, Carpenter

is alleged to have "stomped on Individual #1's genitals with a shod foot while Individual #1 lay face up on the ground, handcuffed behind his back." *Id.*[3]

Count Two charged both defendants with violating 18 U.S.C. § 242 by using unreasonable force against Individual #1. Doc. 1 at 3. The Indictment charges that both defendants "rammed Individual #1 into the exterior of a patrol vehicle and kicked Individual #1's legs." *Id.*[4]

Count Three charges that defendant Handley alone violated 18 U.S.C. § 1512(b)(3), which prohibits witness tampering. *Id.* at 4. Specifically, the indictment charges that the defendant

> knowingly engaged in misleading conduct toward another person and persons, that is the Grand Jury sitting in the Northern District of Alabama, with the intent to hinder, delay, and prevent the communication to federal law enforcement officers and federal judges of the United States of truthful information relating to the commission and possible commission of the federal offenses charged in COUNTS I and II. That is, the defendant, JAMES MATTHEW HANDLEY, knowingly misled the Grand Jury in statements provided in connection with its investigation into the circumstances surrounding the arrest of Individual #1 and the escort of Individual #1 to the Walker County Jail. Specifically, JAMES MATTHEW HANDLEY engaged in misleading conduct by: (1) testifying that after being arrested Individual #1 walked to the patrol vehicle when, in fact, Individual #1 was dragged to the vehicle after defendant CARL LOFTON CARPENTER stomped on

---

[3] Carpenter has since signed a plea agreement, which was docketed on April 1, 2025. Doc. 30. On April 10, Carpenter filed an unopposed motion to continue his change of plea hearing, which was previously set for April 29, 2025. Doc. 38. As grounds for this request, Carpenter stated that he "feels he needs more time to discuss and evaluate his case prior to his plea and has requested additional time of at least 60 days to consult with Counsel." *Id.* at ¶3. On April 22, the Court granted Carpenter's motion and reset his change of plea hearing to July 15, 2025. Doc. 39.

[4] In moving to dismiss Count Three only, the defendant does not intend to concede that Count Two is meritorious. That count simply lacks the pleading defects which plague Count Three.

>Individual #1's genitals with a shod foot; and (2) testifying that Individual #1 "chose" not to walk upon removal from the patrol vehicle in the Jail's sallyport, while omitting information that Individual #1 had been the subject of the force described in Counts I and II, which would have explained Individual #1's difficulty in walking after he was removed from a patrol vehicle.

*Id*. at 4-5.

### III. THE RELEVANT LEGAL FRAMEWORK

#### A. The Standard for Dismissal

Under Federal Rule of Criminal Procedure 12(b)(3)(B), a court may dismiss an indictment "where there is an infirmity of law in the prosecution . . . [but not merely] on a determination of facts that should have been developed at trial." *United States v. deVegter*, 198 F.3d 1324, 1326 (11th Cir. 1999) (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)). In considering a motion to dismiss on those grounds, a court is limited to "the face of the indictment and, more specifically, *the language used* to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). The Federal Rules of Criminal Procedure require an indictment to be "a plain, concise, and definite written statement of the essential facts *constituting the offense charged*." FED. R. CRIM. P. 7(c)(1) (emphasis added).

For an indictment to be valid, it must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962). When the facts alleged in the indictment do not legally constitute the offense charged, a

5

defendant may move to dismiss his indictment for "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v). A court is "required to dismiss the indictment if it fails to allege facts that constitute a prosecutable offense." *United States v. Cure*, 804 F.2d 625, 627 (11th Cir. 1986); *see also, e.g., United States v. Bobo*, 344 F.3d 1076, 1086 (11th Cir. 2003) ("[T]he district court erred in failing to dismiss the indictment because it does not state an offense under the health care fraud statute, and thus, as a matter of law, is deficient."); *United States v. Peterson*, 544 F. Supp. 2d 1363, 1371 (M.D. Ga. 2008) (count charging extortion by a public official dismissed where conduct alleged fell "outside the scope of the Hobbs Act").

### B.     The Relevant Statutes

#### 1.     18 U.S.C. § 1512

Two portions of this statute are relevant here. First, Subsection (b)(3) provides:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> . . .
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . .
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b)(3).

6

Second, 18 U.S.C. § 1512(c)(2) provides:

(c) Whoever corruptly—

. . .

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

*Id*. As used in § 1512, the term "official proceeding" includes "Federal grand jury." 18 U.S.C. § 1515(a)(1)(A). The term "misleading conduct" is defined to include:

(A)   knowingly making a false statement;

(B)   intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement;

(C)   with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity;

(D)   with intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or

(E)   knowingly using a trick, scheme, or device with intent to mislead[.]

18 U.S.C. § 1515(a)(3).

### 2. 18 U.S.C. § 1623

The perjury statute, 18 U.S.C. § 1623, prohibits "knowingly mak[ing] any false material declaration . . . in any proceeding before or ancillary to any court or grand jury of the United States." 18 U.S.C. § 1623(a). In *Bronston v. United States*, 409 U.S. 352 (1973), the Supreme Court rejected the argument that testimony that is literally true could serve as a basis for conviction. *Id*. at 360 ("the perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth").[5]

## IV. ARGUMENT

### A. Overview

The defendant recognizes that were this Court simply asked to determine whether the statutory definition of misleading conduct encompassed literally true but misleading statements, no cause for dismissal would exist. While the defendant disputes that he engaged in any misleading conduct before the grand jury, he acknowledges that the relevant statutory definition covers both false and misleading

---

[5] *Bronston* involved a prosecution under a separate perjury statute, 18 U.S.C. § 1621. Subsequent decisions, including those in this circuit, have recognized that the literal truth defense *Bronston* recognized under that statute also applies to prosecutions under § 1623. *See United States v. Abrams*, 568 F.2d 411, 422 (5th Cir. 1978).

testimony within the definition of "misleading conduct." *See* 18 U.S.C. § 1515(a)(3).

But this motion raises a separate issue: whether engaging in misleading conduct before the grand jury permits a charge under § 1512(b)(3). More specifically, can the grand jury be deemed "another person" toward which the defendant allegedly engaged in misleading conduct? Because the answer to that question is "no," Count Three is due to be dismissed.

### B. The Grand Jury is Not a "Person" Under 1512(b)(3)

#### 1. The Dictionary Act Controls the Definition of the Word "Person" Under Section 1512

While 18 U.S.C. § 1515 defines six terms used in 18 U.S.C. §§ 1512 and 1513, "person" is not one of them. In the absence of a statutory definition, the Court should consult the Dictionary Act, 1 U.S.C. § 1. *See Return Mail, Inc. v. U.S. Postal Serv.*, 587 U.S. 618, 627 (2019) ("[t]he Dictionary Act has since 1947 provided the definition of 'person' that courts use '[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise'"). The Dictionary Act defines the word "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. The Supreme Court has previously looked to the Dictionary Act to determine how to interpret use of the term "person" in various statutes. *See, e.g., Return Mail*, 587 U.S. at 627 (exclusion of "Government" from the Dictionary Act definition

9

meant that a federal agency was not a "person" authorized to seek review through Patent Trial and Appeal Board administrative proceedings); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 275 (1947) ("[t]he absence of any comparable provision [to the provision in the Dictionary Act extending the definition of person to partnerships and corporations] extending the term to sovereign governments implies that Congress did not desire the term to extend to them").[6]

### 2. The Plain Text of the Dictionary Act and Section 1512 Does Not Support the Government's Broad Reading of Those Statutes

Principles of statutory construction preclude the government's reading of Section 1512 to include the grand jury as a "person." Courts in this Circuit recognize that "when a legislature has enumerated a list or series of related items, the legislature intended to exclude similar items not specifically included in the list." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1193 (11th Cir. 2011). This interpretive canon is known as *expressio unius est exclusio alterius*. *Id*. More specifically, *expressio unius* applies "when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)).

---

[6] To be sure, none of those decisions have applied the Dictionary Act in the context of defining the term "person" as used in § 1512(b)(3). But the unprecedented nature of this question undercuts, rather than supports, Count Three as charged.

Here, Congress included "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals," as members of an "associated group or series" defining the word "person." *See* 1 U.S.C. § 1; *Barnhart*, 537 U.S. at 168. This "justif[ies] the inference," *id.*, that Congress deliberately excluded the words "grand jury" or "grand jurors" from the associated group of "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1.

Similarly, courts in this Circuit recognize that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Pate*, 84 F.4th 1196, 1202 (11th Cir. 2023) (citation omitted). As a related principle, courts recognize that "where Congress knows how to say something but chooses not to, its silence is controlling." *Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1209 (11th Cir. 2009) (citation omitted).

Here, the statute includes a grand jury within the definition of an "official proceeding." 18 U.S.C. § 1515(a)(1)(A). That term is used specifically in § 1512(c)(2), which provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so" may be prosecuted. *Id*. Put differently, Congress "kn[ew] how to say" that impeding a grand jury is a

11

prosecutable offense—it did so in § 1512(c)(2). *See Freemanville*, 563 F.3d at 1209. Had Congress intended to criminalize "engag[ing] in misleading conduct toward" a grand jury in Section 1512(b)(3), it could have done so. But it did not.

The plain text of 1 U.S.C. § 1 and 18 U.S.C. § 1512 compels the conclusion that Congress did not intend § 1512(b)(3) to apply to alleged "misleading conduct" toward grand juries.

### 3. A "Grand Juror" is Also Not a "Person" Under Section 1512(b)(3)

Further, any argument that a "grand jury" is not a person, but a "grand juror" is, would be misplaced. Chapter 73 of the federal criminal code, entitled "Obstruction of Justice," contains number of component statutes. 18 U.S.C. § 1503, entitled "Influencing or injuring officer or juror generally" provides, in relevant part:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any **grand** or petit **juror** . . . in the discharge of his duty, or injures any such **grand** or petit **juror** in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror . . . shall be punished[.]

18 U.S.C. § 1503(a) (emphasis added). Again, the Court should consider the choice Congress made to use specific language which covered the grand jury – or, in this instance, grand jurors – as opposed to the use of the general term "person" in § 1512(b)(3) in light of the principles recognized in *Pate* and *Freemanville Water*.

**4.  Application of *Fischer v. United States*, 603 U.S. 480 (2024)**

There is another, perhaps even more compelling, basis to read the use of the specific term "grand juror" in § 1503(a) to preclude the notion that Congress intended its use of the term "person" in § 1512(b)(3) to include a "grand juror" as well. Evaluation of that basis begins by comparing the language used in the respective statutes. Under § 1503, certain conduct is prohibited:

> Whoever ***corruptly***, or ***by threats*** or force, or by any ***threatening letter or communication***, endeavors to influence, ***intimidate***, or impede any grand or petit juror, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror . . . shall be punished [by] . . . imprisonment for not more than 10 years, a fine under this title, or both.

18 U.S.C. § 1503(a)-(b)(3) (emphasis added). The emphasized words outlaw conduct which is also covered by § 1512(b)(3):

> (b) Whoever knowingly uses ***intimidation***, ***threatens***, or ***corruptly persuades*** another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> . . .
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . .
>
> . . .
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

*Id* § 1512(b)(3).

13

It would be illogical for Congress to enact § 1503 to make it a crime to corruptly, or by threats, or by any threatening letter or communication, endeavor to intimidate a grand juror and then also separately and additionally employ § 1512(b)(3) to criminalize the use of intimidation or threats or efforts to corruptly persuade that same category of individuals. Such an approach makes even less sense given the disparity of punishments for identical conduct which, under the government's view, might be undertaken against the same group of individual victims. As noted above, violations of § 1503 (other than those involving attempted or successful killings) result in a maximum 10-year sentence. But the government would read § 1512(b)(3) to entitle it to charge the same conduct against the same type of victim and secure a sentence twice as long.

This is precisely the type of scenario in which the Supreme Court recently rejected the government's expansive interpretation of § 1512(c). *Fischer v. United States*, 603 U.S. 480 (2024). *Fischer* considered whether the "otherwise" clause in § 1512(c)(2) enlarged the scope of § 1512(c)(1), which imposes criminal liability on anyone who corruptly "alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." *Id*. The government argued that § 1512(c)(2) – which covered conduct which "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so[,]" reached "all forms of

14

obstructive conduct *beyond* Section 1512(c)(1)'s focus on evidence impairment." *Fischer*, 603 U.S. at 490 (quoting Brief for United States at 13) (emphasis in original).

The *Fischer* Court rejected the government's expansive reading for several reasons, including one of particular import here. After noting that the government's sprawling interpretation would effectively render § 1512(c)(2) duplicative of other obstruction statutes which provided for milder punishments, the Court stated:

> Rather than transforming this evidence-focused statute into a one-size-fits-all solution to obstruction of justice, we cabin our reading of subsection (c)(2) in light of the context of subsection (c)(1). Doing so affords proper respect to "the prerogatives of Congress" in carrying out the quintessentially legislative act of defining crimes and setting the penalties for them. . . . We have long recognized that "the power of punishment is vested in the legislative, not in the judicial department," . . . and we have as a result "'traditionally exercised restraint in assessing the reach of a federal criminal statute,'" . . . The Government's reading of Section 1512 would intrude on that deliberate arrangement of constitutional authority over federal crimes, giving prosecutors broad discretion to seek a 20-year maximum sentence for acts Congress saw fit to punish only with far shorter terms of imprisonment—for example, three years for harassment under § 1512(d)(1), or ten years for threatening a juror under § 1503.

*Fischer*, 490 U.S. at 497 (citations omitted).

This logic applies with equal force here. Reading § 1512(b)(3) to include "grand jury" or "grand juror" within the definition of a "person" results in significant overlap between the conduct covered by that statute and the conduct prohibited under § 1503. That outcome effectively empowers the government to decide whether

15

to charge such conduct and then unilaterally decide whether to "seek a 20-year maximum sentence for acts Congress saw fit to punish only with far shorter terms of imprisonment—for example, . . . ten years . . . under § 1503." *Fischer*, 490 U.S. at 497. An effort to secure such an outcome should fare no better here than it did in *Fischer*.

## V.     CONCLUSION

WHEREFORE, defendant James Matthew Handley respectfully requests that his Motion to Dismiss Count Three of the Indictment be granted.

Respectfully Submitted,

/s/ *William C. Athanas*
William C. Athanas
Nicolas E. Briscoe
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 521-8000
Facsimile:  (205) 521-8800
bathanas@bradley.com
nbriscoe@bradley.com

William M Dawson
DAWSON LAW OFFICE
1736 Oxmoor Road, #101
Birmingham, AL 35209
205-307-7021
bill@billdawsonlaw.com

***Attorneys for Defendant James Matthew Handley***

## CERTIFICATE OF SERVICE

I hereby certify that, on May 23, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

>                         /s/ William C. Athanas
>                              OF COUNSEL